OF THE STATE OF ARKANSAS. **533**

Term, 1858.]                    McDaniel ad. vs. Crosby et al.

## McDaniel ad. vs. Crosby et al.

Upon an issue of *devisavit vel non*, the affirmative or burden of the issue is upon the party who is endeavoring to set aside the probate (*Rogers et al. vs. Diamond,* 13 *Ark.* 479); and where a party alleges the mental incapacity of a testator, he must prove it.

The attesting witnesses to a will are regarded in law as placed around the testator, that no fraud may be practiced upon him in the execution of the will, and to ascertain and judge of his capacity (15 *Ark.* 600; 17 *Ib.* 292); and they may testify as to their opinions of the testator's capacity at the time of executing his will—other witnesses must state the facts, not their opinions of the sanity or insanity of the testator.

Where there is any evidence before the jury from which they might infer the mental incapacity of the testator to make the will, at the time of execution, though the evidence be meagre and inconclusive, this Court will not, upon the mere weight of evidence, set aside their finding against the will.

When a will is written by the party to be benefited by it, stricter proof is required of volition and agency on the part of the testator than in other cases: and in such case, the party seeking to establish the will must show, beyond reasonable doubt, that the testator had such mental capacity, and such freedom of will and action as are requisite to render a will legally valid.

If a person induce another by persuasion or flattery to make a will in his favor, it does not invalidate the will; nor is it every fear, or a vain fear, that will have the effect of annulling a will. It must be such a fear as, if not influenced by it, the testator would not have made his will in the same manner. So, where the will is written by the beneficiary, and the testator is influenced to execute it in consequence of previous threats, menaces, abuse, harsh and overbearing conduct, violence committed or threatened, and because of fear that the legatee would do him bodily harm if he did not, the will is invalid.

The attesting witnesses to a will must attest it *at the request of the testator;* or there must be such attendant circumstances that the jury may infer such request (*Rogers et al. vs. Diamond,* 13 *Ark.* 479.)

Where the issue involves the question whether a testator was induced to execute a will by fear, threats, or undue influence on the part of the beneficiary, it is competent to prove his previous general conduct towards the testator; and if such general conduct conduces to show abuse, menace and violence on the part of the beneficiary, and fear and timidity on the part of the testator, and the jury find against the will, this Court will not on the weight of evidence set aside their verdict.

The 12th Rule, governing the practice of the Circuit Courts, as adopted by this Court at the July Term, 1848, does not, in letter or spirit, restrict the Court as to *the time* at which it may give instructions on its own motion: and this Court will not set aside a verdict because after the jury had retired, they returned into Court, and the Court then instructed them on its own motion, unless such instruction misstate the law to the prejudice of a party.

*Appeal from Hempstead Circuit Court.*

Hon. A. A. Stith, Circuit Judge.

Cummins & Garland, for the appellees.

We set out with the proposition, that to overthrow a will, for fraud or undue influence on the part of a legatee, or insanity of the testator, the burden of proof is on those attacking such will, and the strongest possible evidence is always required; the courts cannot presume at all; and doubly strong is the proof required to be when the proceedings are had at law. *Dew vs. Clark,* 5 *Russ.* 163; *Cartwright vs. Cartwright,* 1 *Phil.* 100; *Jackson vs. King,* 4 *Cowen* 207; *Stevens vs. Van Cleve,* 4 *Wash. C. C. R.* 262; *Jackson ex. dem. vs. Van Dusen,* 5 *John.* 144; *Hoge vs. Fisher,* 1 *Peters C. C. R.* 163; *Panard vs. Jones,* 1 *Cal.* 448; 1 *Jarman on Wills* 30, 31; 3 *Stark. Ev.* 1701; 2 *Greenl. Ev.* 689. And, as remarked by the Court in *Dew vs. Clark, supra,* this burden is a pretty heavy one. Equity may infer or presume fraud, law cannot. 1 *Story's Eq.,* secs. 310, 311.

We freely confess, that the law does not require that the proof of undue influence should be confined to the time of the execution of the will. Yet we do say, that the party offering such proof, must show that it is so connected with the act done as to furnish some reasonable ground of inference, that the act was influenced in whole, or in part, by it. *Bunyard vs. Mc-Elroy,* 21 *Ala.* 311. This is the law, also, as to offering proof of incapacity at one time when the will is executed at another. *Terry vs. Buffington,* 11 *Geo.* 337. But, more on this point hereafter.

Facts to go to the jury, must have a bearing on the point to

be settled by their verdict. *Davis vs. Calvert,* 5 *Gill. & John.* 269. Although it is not necessary that the improper influence should be practiced at the time of making the will, it is necessary that the will should be made under its general and controlling influence. *Id.*; *Small vs. Small.* 4 *Greenl.* 220.

In arguing the instructions, it is useless to set them out in full here again. The first asked by the petitioners, as an abstract principle of law, may be good, but it proceeds upon a wrong supposition, that is, that there is no evidence proving the attestation as required by law; but *Kimbell,* one of the witnesses to the will, states, that Crosby declared he would give his property to F.; that C. signed it voluntarily, and both he and *Arnett* state that it was signed by them in his presence: hence, we say, to all intents and purposes, this was a compliance with the law requiring the attestation of witnesses, according to *Rogers vs. Diamond,* 13 *Ark.* 475. There it is said, one witness is sufficient to prove the attestation. See, also, *Den vs. Milton,* 7 *Halstead* 70. If the testator might have seen the witnesses sign the will, the attestation is sufficient. *Wright vs. Lewis,* 5 *Rich.* 212; *Hall vs. Hall,* 17 *Pick.* 134; *Cornelius' will,* 14 *Ark.* 675. It seems that in *Rogers vs. Diamond,* this Court said, that the request to sign as witness, might be made to the witness by another person in presence of the testator. So far, then, as *Arnett* is concerned, he signed at the request of a third person. We hold, under these cases, that this instruction has no foundation; that the facts show a compliance with the law, and therefore this could not be given as law.

And we suggest here, to the Court, that a substantial compliance with the statute, is all that is required in these cases by any Court: so decided by this Court, (ENGLISH, C. J.,) in *Abrakam vs. Wilkins,* 17th *Ark.*

As for the other instructions asked by petitioners, they are possibly good principles of law when they apply; but a glance at them will show the Court that they have no application to the facts here. They assume that there is evidence of C.'s not

being of disposing mind and memory; not a free agent; that he lacked reason and understanding sufficient to make a will; that he was moved by previous threats, abuses, etc., of F., or fear of F.; that F. procured execution by artifice and fraud, and C. was unable to resist the artifice and fraud of F., and that F. had undue influence over C., and took advantage of that, to make C. execute the will against his wishes. And we humbly submit that none of these things are before the Court, sufficiently strong to base the instruction upon, as asked by the petitioners.

As for Crosby's mind, *Arnett* says he thinks he was in his right mind; and it seems he had sense enough left to tell why he made his will as he did; that he passed the civilities of the day to the witnesses, and discoursed as to F.'s friendship to him; all this, we contend, does away with any possible right to have an instruction, on that ground, for the petitioners. The insanity or unsoundness of mind, under which they endeavor to make it appear that C. was laboring, is the 4th class, as laid down by COKE, from drunkenness or intoxication. This is no legal exception to the will, unless it absolutely disables a party from disposing of his property with reason. *Starret vs. Douglas*, 2 *Yeates* 48; *Whitenack vs. Stryker*, 1 *Green Ch.* 9. Crosby might not have been able to transact business generally; he might not have been brilliant or talented, yet, if in the making of his will, he understood what he was doing, it is sufficient. *Kinne vs. Kinne*, 9 *Conn.* 102; *Stewart's ex. vs. Lispenard*, 26 *Wend.* 255; *Comstock vs. Hadlyme Ecc. Society*, 8 *Conn.* 254; *Boyd vs. Ely*, 8 *Watts* 66; *Clark vs. Fisher*, 1 *Paige* 171; *Hathorn vs. King*, 8 *Mass.* 371; *Dormick vs. Reichenback*, 10 *Serg. & R.* 81; *Heister vs. Lynch*, 1 *Yeates* 108; *Tufnel vs. Constable*, 3 *Knapp Pro. Conn.* 122; 1 *Jarman on Wills* 30, *et seq.*; 2 *B. Monroe* 74, 79; 4 *Wash. C. C.* 262; 5 *Johns. Ch.* 158; *Shelford on Lunatics*, 574; *Swinburn on Wills*, sec. 3; 1 *Roberts on Wills*, 25, 26.

Feebleness of mind, however considerable, will not invalidate a will. *Newhouse vs. Godwin*, 17 *Barb.* (*N. Y.*) 236; 7 *Rich.* (*S. C.*) 474.

As to threats, undue influence, etc., in obtaining a will, see 20 *Penn. Rep.* 329.

So, we affirm, too, that the other instructions touching the fear, control; F. writing C.'s will, against C.'s wishes, etc., fall far short of the standard. We aver the law to be, that a person, by persuasions and fair argument, can procure a will, and it will not be set aside for that reason; that the legatee's writing a will is not such an undue influence or fraud as would annul the will; and that undue influence must be such as to destroy free agency, and that the testator could not resist it in making the will. 1 *Williams Ex.* 39; 3 *Whart.* 129; 3 *Serg. & R.* 267; 5 *Id.* 207; 1 *Green Ch.* 82: 4 *Greenlf.* 220; 1 *Jarman on Wills* 20, *et seq.* In *Mountain vs. Bennett, supra.*, we have the law thus: " The influence to vitiate an act, must amount to force and coercion, destroying free agency—it must not be the influence of friendship and attachment: and further, there must be proof, that the act was obtained by this coercion; by importunity, which could not be resisted; done merely for the sake of peace." Even should there be duress used in obtaining the will, if when the fear is past, or the restraint removed, the testator confirms the will, the will is made good, so far as this objection affects it. *Roberts on Wills*, 1 *vol.*, *p.* 30.

If this Court had to say, from the testimony, what the cause of making this will was, would'nt it conclude that the one assigned by the testator was a very good one; that Finn was his friend, and had been? But, leaving this out of the question, we will look in vain to the testimony for that force and coercion of which the law speaks, and which is necessary to be seen, exercised over C. by F., and wringing from him the will against his wishes. Not one word of it, we say, for C. freely confessed he signed it, and gave reasons for it, that would speak well for the clearest mind.

SWINBURN, part 7, sec. 4, has this forcible and apt language on this point: " It is no part of the testamentary law of this country, that the making of the will *must originate* with the testator, nor is it required that proof should be given of the

commencement of such transaction, provided it be proved that the deceased understood, adopted and sanctioned the disposition proposed to him, and that the instrument itself embodied such disposition." Does not Crosby understand that he had given his property to F.? Does he not sanction, adopt and confirm it? And is not the disposition acknowledged by him, embodied in the will? The record answers, emphatically, yes! Then there is no basis upon which to rest the other instructions of petitioners. We cite further in support of our views, *Lide vs. Lide*, 2 *Brevard* 403; *Gilbert vs. Gilbert*, 22 *Ala.* 529; 4 *Hagg.* 477; *Wise vs. Johnson*, 1 *Cas. Temp. Lee.* 600; *Lady Strathmore vs. Bowes*, 2 *Br. C. C.* 345. If such be the law, the instructions we now argue are far from being good in the abstract, and are much less so as applied here.

We submit, too, that when a case has been left to the jury, evidence, instructions, and argument closed, the Court cannot instruct them further, unless in explanation of something already given them in charge, and then only when both parties assent. This position is certainly consistent with the 12th rule of practice adopted July, 1848, by this Court, for civil causes in the Circuit Court, (3 *Eng. Rep.* 240,) which states expressly, that when instructions to the jury are desired, they should all be asked for in writing, and settled by the Court before argument to the jury; and all instructions by the Court of its own motion, shall be given in writing, if requested by either party. Then, if no positive decision sustains us in this, we hold that this rule does, and it is binding on all the Circuit Courts to observe it.


S. H. HEMPSTEAD, for the appellee.

The judgment in this case must be affirmed in any event, for the reason that the bill of exceptions does not show, in any way, that it contains all the evidence adduced on the trial.

The opinions of subscribing witnesses to a will are admissible evidence, because, it is said they are placed around the testator to ascertain and judge of his capacity, and whose atten-

tion indeed is supposed to be directed to that point.   1 *Greenl. Ev.* 440; *Poole vs. Richardson,* 3 *Mass.* 330; *Chase vs. Lincoln,* 3 *Mass.* 236; *Buckminster vs. Perry,* 4 *Mass.* 593; *Kelly's Heirs vs. McGuire,* 15 *Ark.* 600; *Abrahams vs. Wilkins,* 17 *Ark.* 292.

And upon questions of sanity and competency, the opinions of other persons than subscribing witnesses or medical men, are admissible and competent, when based on facts and circumstances detailed by them in their testimony.   In other words, they may give their opinions, in connection with the facts disclosed.   *Culver vs. Haslam,* 7 *Barb.* 314; *DeWitt vs. Bailey,* 13 *Barb.* 550, *and cases there cited; Clary vs. Clary,* 2 *Iredell's R.* 78; *Kelly vs. McGuire,* 15 *Ark.* 601.

No one can read the testimony, and not come to the conclusion that, at the time the will purports to have been made, the testator was not in a condition to make it.   But suppose the weight of evidence to be against that hypothesis, still this Court cannot, on that ground, at least, reverse the finding of the jury. If there *is any evidence* to sustain the verdict, it cannot be set aside; as was expressly held in *Abraham vs. Wilkins,* 17 *Ark.* 292.

But there was undue influence exerted by Finn over Crosby. It was an influence calculated to subdue and control a mind which had become impaired by intemperance and timidity. Crosby was afraid of Finn.

To avoid a will, it is not necessary that threats or violence should have been practiced or resorted to at the time of making the will.   It is enough if the will was made under the general controlling and continuing influence of fear, or dominion over the testator, by the person who so put him in fear, though not immediately exercised in regard to that particular instrument.   1 *Jarman on Wills* 37; *Davis vs. Calvert,* 5 *Gill & Johns.* 303.

A will obtained by undue influence will be set aside.   *Clark vs. Fisher,* 1 *Paige,* 171; *Harrison vs. Rowan.* 3 *Wash. C. C. R.* 584; *Kelly's Heirs vs. McGuire,* 15 *Ark.* 603.

This will was not procured by honest intercession and per-

suasion, nor by mere flattering speeches, for that may be lawful. But it was by a different kind of influence; that arising from threats, abuse, violence and fear—that influence which did not leave the testator in the enjoyment of full liberty and freedom, or in the possession of power to withstand control, or resist importunity. 1 *Jarman* 36, *and cases cited in note* 3.

In fact Crosby, for years before his death, was in no condition to resist Finn at all, and never attempted any thing of the sort, either in word or deed.

What will constitute fear sufficient to destroy the idea of free agency, must necessarily depend upon the character of the men, and be judged of discreetly by the circumstances of each case. *Swinb. Part* 7, *sec.* 2, *pl.* 7; *Williams on Executors* 37.

2. The will was *written* by Finn, the sole devisee—he sent for the witnesses to subscribe it—and requested them to witness it—and in fact throughout the whole affair, Finn was the *actor*, and Crosby the passive instrument in his hands—weak, feeble, excited with liquor, and in " an awful condition."

To suppose that such a will can stand the searching test of judicial investigation, is to suppose that fraud and injustice and wrong will be connived at, or so hidden as to escape observation.

The rule of law is, that if a will is written or procured to be written by a person benefited by it, it casts suspicion on the will, and unquestionable proof of volition and capacity is then required. 1 *Jarman* 41; *Shelford on Lunacy* 317 *to* 334; *Duffield vs. Robison*, 2 *Harrington* 384; *Tomkins vs. Tomkins*, 1 *Bailey* 92; *Breed vs. Pratt*, 18 *Pick*. 116.

In *Kelly's Heirs vs. McGuire*, 15 *Ark*. 602, it was said by the Court that the fact of a voluntary deed having been prepared by, or at the instance of the party who takes a benefit under it, was a suspicious circumstance, and raised a presumption of fraud. *Shelford* 271; *Owen's Case*, 1 *Bland's Ch. R*. 370; *Sears vs. Shafer*, 1 *Barb*. 415.

The rule is the same in deeds and wills, except more stringent as to the latter.

Finn wrote the will—read it to Crosby—told him to get up and sign it—handed him the pen to do it—and Crosby signed it, lay down in bed again and said. nothing. Arnett and Kimbell signed it as subscribing witnesses—not at the request of Crosby, for he made none—but at the request of Finn.

The execution of the will was not proved on this trial or issue, as required by the statute. *Digest* 989. The probate was not, and could not be read as evidence; because the subscribing witnesses were present. *Rogers vs. Diamond*, 13 *Ark.* 482, 487. The appellants failed to establish the will, and for that reason alone the judgment would have to be affirmed.

Mr. Justice HANLY delivered the opinion of the Court.

This was a petition brought by Daniel P. Crosby and others, heirs of Joseph R. Crosby, deceased, against James McDaniel, as administrator of Richard H. Finn, deceased, and the widow and heirs of Finn, to the June term, 1856, of the Hempstead Circuit Court, to set aside and hold for nought a certain instrument of writing, proved up before the Court of Probate of that county, as the last will and testament of the above named Joseph R. Crosby, and duly recorded as such.

. The petition states, in substance, that the petitioners are the sole and only heirs at law and distributees of Joseph R. Crosby, deceased, who died in Hempstead county some time in the year 1852; that after his death, Richard H. Finn produced and proved up a paper, purporting to be the last will and testament of Joseph R., which, by its terms, gave all the estate of Joseph R., after the payment of his just debts, to Finn, who was made the executor thereof; that Finn died after proving up the will, and taking upon himself the execution thereof, leaving his wife and children him surviving; that petitioners, as legal heirs and distributees of Joseph R. Crosby, are precluded from obtaining possession of his estate, as Finn, in his lifetime, and his widow and heirs since his death, claim that all the property left by Joseph R. Crosby at his death, vested in Finn, in his lifetime,

under the will, and since his death, constitute a part of his estate.

The grounds assumed in the petition to authorize the relief sought, are as follows:

1. That the testator was not possessed of a sound and disposing mind and memory at the time the will was executed,

2. That the will was not the result of the voluntary act of the testator, but was made by him under the stress of fear, produced on his mind by Finn, caused by the harsh, cruel and barbarous conduct of Finn practiced on him, rendered weak in body and imbecile in mind, by a long continued intemperate use of ardent spirits. And,

3. That said will was written and dictated by Finn, and was executed by the testator, and witnessed by the subscribing witnesses thereto, at the solicitations and under the directions of Finn; the testator passively acting, fearing to incur the displeasure and resentment of Finn, and the witnesses signing and attesting the same to accommodate themselves to his wishes and views.

The prayer of the petition was to the effect, that the admintrator, widow and heirs of Finn, be made defendants; for process against them, and that an issue be formed as to the validity of the will, to be tried by a jury, and that judgment be rendered setting aside the former probate, and declaring the will void and of none effect.

Process was issued against the defendants, and returned executed upon them. At the return term they all appeared by counsel, and entered their general denial to all the allegations stated in the petition. The issue thus formed was directed to be tried by a jury. On the trial before a jury, the issue was found for the petitioners, the verdict stating that the paper in question was not the last will and testament of Joseph R. Crosby, deceased. The Court rendered judgment final in accordance with the verdict and for costs of suit.

The defendants filed a motion for a new trial, setting out

sundry grounds: which, being considered by the Court, was overruled, and they excepted and appealed to this Court.

The motion for a new trial states the following grounds:

1. The verdict is contrary to law and evidence.

2. The Court permitted improper and illegal evidence to be given.

3. The Court gave the instructions at the instance of the petitioners.

4. The Court refused to give those at the instance of the defendants.

5. Because after the jury retired to consider of their verdict, they returned into Court, and asked the Court, if a witness to the will was, in the eye of the law, such a third person as the law authorized to request the signing of the will; when the Court instructed the jury contrary to law.

Although the bill of exceptions does not profess to contain *all the evidence* adduced at the trial, we propose, notwithstanding the rule which obtains in such cases, (see *Jordan vs. Adams*, 2 *Eng. R.* 350; *Everett vs. Clements*, 4 *Ib.* 480; *Collins vs. Mc-Peak*, 5 *Ib.* 528; *Bankhead vs. Hubbard*, 14 *Ark.* 300,) to consider the several grounds set out in the motion for a new trial, as if the bill of exceptions in reality embodied all the evidence; which, for the time being, we shall assume as being the case.

1. Is the verdict warranted by the law and the evidence?

In answering this question, we shall necessarily have to consider (1.) The sanity or mental capacity of the testator to make a will, at the time the one in question was executed: (2.) Whether he was induced to make it under circumstances showing it was not a free and voluntary act on the part of the testator, but was the result of fear, restraint, force or fraud of Finn: And (3.) Was the will attested in the manner prescribed by law.

*First.* Had the testator mental capacity to make the will?

The substance of the proof on this point is, that testator had been addicted to constant intemperance and continuous intoxication for more than two years before the will in question was

executed: that his health, about the time, had become greatly impaired and enfeebled from that cause; so much so, it is said, he was rarely able to leave his room, or his bed: that his mind was also greatly involved in the decay, which was evident in his body; not unfrequently giving indications of *mania a potu;* so that when the will was executed, in the language of several of the witnesses, he was " in an awful condition." It is also in proof, that after the two attesting witnesses had reached the testator's house, where the will was executed, they had no conversation with him, and did not hear him speak or converse with any one present, except possibly to say, to one of the witnesses, " how do you do?" and in the hearing of the other, "that he thought more of Finn than any one else, and that he should give him his property." One of the attesting witnesses seems to have seen the will signed by the testator. The other did not see it signed, but states that Finn presented the will to the testator after it had been signed by him, and told him to acknowledge it in the presence of the witness, which he did by saying " he had signed it." It is furthermore in proof that the will is wholly in the hand writing of Finn, the sole legatee or devisee therein; that the testator and Finn were not related to each other by affinity, or consanguinity; that the will had been prepared or written before the attesting witnesses reached the place where it was executed, as before stated; that on their arrival, they found no one there but testator and Finn; that testator was in bed, and seemed perfectly prostrate, entirely helpless, and almost wholly unconscious of what was going on around him, until he was aroused by Finn, and " told to get up and sign the will," which, it appears, he was unable to do until assisted by Finn; that after the will was signed by testator, he immediately fell back on his pillow, said but little or nothing, and soon relapsed into the quiet state in which he was when the witnesses first arrived. Both the attesting witnesses express the belief that testator, though in a " reckless" state, and his situation at the time " awful and

wretched in the extreme," was yet in his "right mind" when the act of signing the will was done by him.

Before proceeding to decide in reference to the testator's capacity to make the will, under the state of facts just shown, we propose to state a few principles of law, which must be taken into consideration in forming our conclusions on the subject.

In *Rogers et al. vs. Diamond*, 13 *Ark. R.* 479, 480, this Court held, upon an issue of *devisavit vel non*, the affirmative or burden of the issue was upon the party, who was endeavoring to set aside the probate, and have the will declared void, let the grounds be what they may. Apart from this express adjudication, we apprehend there can be no doubt but that, when a party alleges the incapacity of a testator, it is incumbent on him to prove the fact; for the reason, as it is said, that every man is presumed to be of sane mind until the contrary is shown. See 1 *Jarman on Wills* 72; 1 *Greenlf Ev. sec.* 42; 2 *Ib. sec.* 689; *Jackson vs. Van Dusen*, 5 *John. R.* 144; *Stephens vs. Van Clive*, 4 *Wash. C. C. R.* 262; *Peters vs. Bingham*, 10 *N. Hamp. R.* 514; *Duffield vs. Robeson* 2 *Harrington R.* 375.

In *Cartwright vs. Cartwright*, 1 *Phill.* 100, Sir MM. WYNNE is reported to have said: "When an habitual insanity, in the mind of the person who does the act, is established, then the party, who would take advantage of the fact of an interval of reason, must prove it—that is the law." See *Clark vs. Fisher*, 1 *Paige R.* 171–4; *Jackson vs. Van Dusen ub. sup.; Boyd vs. Eby*, 8 *Watts R.* 66; *Kinlock vs. Palmer*, 1 *Const. R.* (*S. C*) 225; *Griffing vs. Griffing*, *Charlt R.* 217; *Halsey vs. Webster*, 21 *Maine R.* 461; *Whitemarsh vs. Striker*, 1 *Green Ch. R.* 8; *Gable vs. Grant*, 2 *Ib.* 629; *Duffield vs. Robeson ub. sup.*

The attesting witnesses to a will are regarded in law as placed around the testator, that no fraud may be practiced upon him in the execution of the will, and to ascertain and judge of his capacity. (See *Kelly's heirs vs. McGuire et al.*, 15 *Ark. R.* 600; *Abraham vs Wilkins*, 17 *Ib.* 292; *Haywood vs Hazard*, 1 *Bay Rep.* 335; *Chace vs. Lincoln*, 3 *Mass. R.* 237; *Duffield vs. Robeson, ub. sup.; Brock vs. Luckett*, 4 *How.* (*Miss.*) *R.* 482; *Scribner vs.*

*Cranse,* 2 *Paige R.* 147; *Harrison vs. Rowan,* 3 *Wash. C. C. R.*
586–7; *Whitemarsh vs. Stryker, ub. sup.;* 2 *Greenlf. Ev., sec.*
691.)   On this ground these witnesses are permitted to testify
as to the opinion they formed of the testator's capacity at the
time of executing his will, and their opinions, and the facts they
state as occurring at the time are, generally, to be particularly
regarded by the Court, though the opinions of other witnesses
are ordinarily inadmissible, at least unless founded upon facts
testified to by themselves or others in the cause.   (See 1 *Jar-
man on Wills,* 74.)   Witnesses, other than the attesting witnesses,
must state the facts, but not their opinion or judgment merely
of the sanity or insanity of the testator.   See *Kelly vs. McGuire,*
*sup.: Abraham vs. Wilkins sup.;* 1 *Jarman on Wills* 75.

There are cases to be met with, however, which seem to hold
a different doctrine from that just stated.   In the following
cases the law appears to have been thus ruled:

" Where the witnesses had opportunities for knowing and
observing the conversation, conduct and manners of the person
whose sanity is in question, it has been held, upon grave con-
sideration, that the witnesses may depose, not only to particu-
lar facts, but to their opinions or belief as to the sanity of the
party, formed from actual observation.   See *Clary vs. Clary,* 2
*Ind. (Law) Rep.* 78; *Gibson vs. Gibson,* 9 *Yerg. R.* 329; *Clarke*
*vs. State,* 12 *Ohio R.* 483; *Grant vs. Thompson,* 4 *Conn. R.* 203;
*Wagan vs. Small,* 11 *Serg. & R. Rep.* 141; *Hamblett vs. Hamblett,*
6 *N. Hamp. R.* 344.   Such evidence is also said to be admitted
in the Ecclesiastical Courts.   See *Wheeler vs. Alderson,* 3 *Hagg.*
*R.* 574, 604–5.

The contents of the will itself, the manner in which it was
written and executed, the nature and extent of the testator's
estate, his family and connections, their condition and relative
situation to him, the terms on which he stood with them, the
claim of particular individuals, condition and relative situation
of the donee, or legatee named, the situation of the testator
himself, the circumstances under which the will was made, were
held, in *Davis vs. Calvert,* 5 *Gill & John.* 269, 301, all to be pro-

OF THE STATE OF ARKANSAS. **547**

TERM, 1858.]                McDaniel ad. vs. Crosby et al.

per to be shown to the jury, and often afford important evidence in the decision of the question of a testator's capacity to make a will, see also *Hall vs. Warren*, 9 *Vesey R.* 610.

The verdict in this case is like any other, and cannot be disturbed upon the mere weight of evidence. See *Rogers et al. vs. Diamond ub. sup. In re. Cornelius*, 14 *Ark. R.* 657; *Abrahams vs. Wilkins ub. sup.*

It was said by this Court, in *Kelly's heirs vs. McGuire et al., ub. sup.*, that it was wholly impossible and impracticable to lay down any exact general rule as to the incapacity of a party to contract, " because," say the Court, " each case will be found influenced by its own peculiar circumstances. But it may be fully admitted that mere weakness of understanding is not, of itself, sufficient to invalidate a contract, if the person is capable of comprehending the subject. The law does not seem to have attempted to draw any discriminating line, by which to determine how great must be the imbecility of mind to render a contract void, or how much intellect must remain to uphold it. The difficulty in making such discrimination is apparent. See also *Abrahams vs. Wilkins, ub. sup.; Elliott's will*, 2 *J. J. Marsh.* 340; *Dornick vs. Richenback*, 10 *Serg. & R.* 84; *Osmond vs. Fitzroy*, *P. Wms.* 129; *Steward vs. Lispenard*, 26 *Wend. R.* 313.

" He that is overcome by drink," says SWINBURNE, *Pt.* 2 *sec.* 6, " during the time of his drunkenness is compared to a madman, and therefore, if he make his testament at that time, it is void in law (*Duffield vs. Robeson*, 2 *Harring. R.* 375, 383,) which is to be understood, when he is so excessively drunk that he is utterly deprived of the use of reason and understanding, otherwise, albeit his understanding is obscured and his memory troubled, yet he may make his testament, being in that case." See also, *Lowe vs. Williamson*, 1 *Green. ch. R.* 85, 87, 88; 1 *Jarman on Wills* 54, *notes* 3 *and* 4 *and cases cited*.

Having laid down the foregoing propositions, we will now betake ourselves to the consideration of the facts bearing on the question at hand with the view of applying the law to them. We are free to admit that the evidence afforded by the bill of

exceptions tending to establish the incapacity of the testator to make the will at issue, regarded by itself, is of the most meagre and unsatisfactory character, and is not such as would seem to warrant the conclusion that Crosby was, in truth and in fact, incapable, at the time, of making a valid will. It is true, however, there is some evidence tending to show his mental incapacity. There is evidence to the effect that testator had been, for a year and more before the date of the will, occasionally, a prey to that distressing malady—*mania a potu*; that during the presence of this disease he was deprived of reason, and, to all intents and purposes, a madman. It does not, conclusively, appear from the proof, that the will in question was made at a time when Crosby was exempt from *mania a potu*, or during a lucid interval, though the weight of the evidence is, decidedly, that way. Notwithstanding the meagreness of the proof adverse to the testator's capacity, at the time the will was executed, we do not feel ourselves warranted, under the rule adopted on this subject by this Court, to disturb the verdict on that account; for we cannot say there is no evidence at all from which the jury might not have inferred mental incapacity in the testator to make the will, particularly under all the attendant circumstances shown by the evidence. We hold, therefore, in this case, that the Court below did not err in overruling the motion for a new trial on this branch of the first ground assumed therein.

. *rond.* Was the testator induced to make the will in question by the undue influence, force, duress, contrivance or fraud of Finn? Or, in other words, were the jury warranted in so finding, from the facts elicited at the trial?

The facts, in substance, on this point, in addition to those we have already stated, are as follows:

That Finn and the testator had been acquainted, and, apparently, on terms of intimacy for some considerable time before the will was executed. It does not appear that any particular cause or ground of attachment existed between them, or that there was any other feeling entertained by these parties towards

each other respectively, than such as might be supposed to exist between two persons alike intemperate in their habits, and accustomed to regale themselves from the same bowl; for it appears they were in the habit of drinking together, and their place of meeting, as far as the proof goes, was at the house of the testator.  Finn and testator were, in on wise, related to each other by either blood or affinity.  The testator had no family— never having been married—had resided in this State for many years, and probably had no intercourse, or certain correspondence with any of his friends or relations, within that time—had been a man possessed of the ordinary powers of intellect, before they had been weakened and abused by excessive and habitual intemperance—that it was evident his mind and body had both greatly suffered from this cause—that when the will was made, and for months previous, he was seldom able to be about, but was, most of the time, confined to his room and bed—that he was naturally a timid and weakly man, whilst Finn was athletic and robust, and withal, regarded as a dangerous and turbulent man, and particularly so by the testator—that Finn seemed to exercise the most indomitable control over him, and was in the constant habit of threatening and scolding him, whenever their wills or wishes were opposed to each other; and whenever this occurred, the proof is, the testator invariably yielded to the wishes and commands of Finn.  On more occasions than one, Finn was seen to offer personal indignities and violence to the testator, and was heard to curse and denounce him in the roundest and most unmitigated terms, and on each of which occasions, it is said, testator bore all without resentment, and in the most humble and complacent manner—that the will was prepared by Finn, and is wholly in his hand writing, except the signature of Crosby, the testator—that it had been prepared and written out, ready for execution before the witnesses reached the place where it was executed—that no one was present on that occasion, but the two attesting witnesses, Finn and the testator—that the two attesting witnesses were sent for to witness the will by Finn—that it was not signed by the testator, or

acknowledged by him until he was directed to do so by Finn—that the witnesses attested it at the request of Finn, and not at the request of the testator—that it does not appear from the proof, whether the request made by Finn to the witnesses to attest the will was made in the presence or hearing of testator, and that the evidence is doubtful as to the disposition which was made of the will after it was made—whether it was left with Finn, or whether it was retained by the testator—that the will gave all the estate, real and personal to Finn, and that it was of great value, how much is not stated.

As was done above, before deciding upon the testator's capacity to make a will, we will also state a few principles of law, which have a bearing on the question involved in our present enquiry, with the view of assisting us in our conclusions on the subject.

When a will is written, or proved to be written by a person benefited by it, or by one standing in the relation of attorney or counsel, and who is also benefited by it,—these are circumstances to excite stricter scrutiny and require stricter proof of volition and agency. See 1 *Jarman on Wills* 41; *Duffield vs. Robeson, ub. sup.; Tompkins vs. Tompkins,* 1 *Bailey R.* 92; *Durling vs. Loveland,* 2 *Curtis* 225; *Breed vs. Pratt,* 18 *Pick. R.* 115.

In accordance with the above principle, it was held in *Breed vs Pratt,* that " it is incumbent on those, who, in such a case, seek to establish the will, to show beyond reasonable doubt, that the testator had both such mental capacity, and such freedom of will and action, as are requisite to render a will legally valid." See, also, *Clark vs. Fisher,* 1 *Paige Rep.* 171; *Gerresh vs. Nason,* 22 *Maine R.* 438.

Although the testator and the maker of his will may stand in a relation favorable to the exercise of undue influence by the latter, and though there may be suspicious conduct and some deficiency of capacity, yet satisfactory evidence of the *factum* may establish the instrument: it is not in law invalid. See 1 *Jarman on Wills* 43; 1 *Shelford on Lunacy* 319.

Evidence may be given of the state of testator's mind, and

OF THE STATE OF ARKANSAS.                551

TERM, 1858.]            McDaniel ad. vs. Crosby et al.

of his bodily health, both before and after the time when the will was made; still, such evidence is not otherwise to be regarded than as shedding light upon the condition of his mind at that time. See *Harrison vs. Rowan,* 3 *Wash. C. C. R.* 586; *Davis vs. Calvert,* 5 *Gill & John. R.* 269; *Dickinson vs. Barber,* 9 *Mass. R.* 225; *Whitemarsh vs. Stryker,* 1 *Green Ch. Rep.* 11; *Grant vs. Thompson,* 4 *Conn. R.* 203; *Kinne vs. Kinne,* 9 *Conn. R.* 102; *Irish vs. Smith,* 8 *Serg. & R.* 573.

In *Davis vs. Calvert, ub. sup.,* it is said that: " If a man, by occasion of some present fear or violence, or threatening of future evils, does, at the same time, or afterwards, by the same motive, make a will, it is void not only as to him who puts him so in fear, but as to all others." See, also, *Huquenin vs. Boseley,* 14 *Vcs.* 289.

It is said, it must be understood that it is not every fear, or a vain fear, that will have the effect of annulling a will, but a just fear, that is, such as that indeed, without it, the testator had not made his testament at all, at least, not in that manner. As to what will constitute this kind of fear, "no certain rule can be delivered, but it is left to the discretion of the judge who ought not only to consider the quality of the threatenings but also the persons as well threatening as threatened: in the person threatening, his power and disposition: in the person threatened, the sex, age, courage, pusillanimity, and the like." (1 *Williams Exr.* 37). But if the testator, afterwards, when there is no cause for fear, or when the undue influence is removed, ratifies and confirms the testament, it will, it seems, be good. 1 *Williams Ex.* 37; *O'Neale vs. Farr,* 1 *Richardson (S. C.) R.* 80.

With respect to a will obtained by influence, it is not unlawful for a person, by honest intercession and persuasion, to procure a will in favor of himself, or another person (*Harrison's Will,* 3 *B. Mon. Rep.* 351); neither is it, to induce the testator by fair and flattering speeches, for though persuasion, or flattery, may be employed to influence the dispositions in a will, this does not amount to influence, in the legal sense; and

whether or not a capricious partiality has been shown, the Court will not enquire. See *Kelly's heirs vs. McGuire et al.*, 15 *Ark. R.* 602; 1 *Williams Exrs.* 39; 1 *Jarman on Wills* 37; *Chandler vs. Ferris*, 1 *Harring. R.* 454; *Wier's Will*, 9 *Dana R.* 440.

In view of these authorities, and the principles of law stated under this head, we are irresistibly forced to the conclusion, that the jury were warranted, from the facts stated, to find for the appellees. Our judgment, on this branch of the subject, is based upon the evidence afforded by the record in reference to the relations subsisting between the parties—their character and bearing towards each other—the physical and moral condition of the testator—the influence which Finn had obtained over him, seemingly from his harshness and oppressive conduct—the secret manner in which the will was procured—the extent of the property devised—and all the attendant circumstances shown by the proof.

And this brings us to the third and last enquiry growing out of the first ground assumed in the motion for a new trial.

*Third.* Was the will duly and properly executed? or was that fact proven at the trial in the Court below?

The facts on this point are briefly these:

*Arnett* was one of the attesting witnesses to the will, and swore that testator made no request that Kimbell, the other attesting witness, and himself should sign it as witnesses,—states that Finn sent for him and requested himself and Kimbell to do so, but does not say whether that request was made in the presence or hearing of testator, or not, nor whether he and Kimbell attested the will in the presence or view of the testator.

*Kimbell*, the other attesting witness, swore that he was sent for to attest the will, by Finn; that he and *Arnett* attested it in the presence of the testator—did not see testator sign the will—Finn presented the will to testator, and told him to acknowledge it, which he accordingly did—Finn asked witness to attest the will—does not say whether this request was or was not made in the hearing of the testator.

OF THE STATE OF ARKANSAS. 553

TERM, 1858.]                McDaniel ad. vs. Crosby et al.

The provision of the statute of wills on this subject is as follows:

"There shall be, at least, two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, *at the request of the testator*." See *Dig., chap.* 170, *sec.* 4, *p.* 989.

In *Rogers et al. vs. Diamond*, 13 *Ark. Rep.* 487, this Court said: "that each of the attesting witnesses must sign his name as a witness, *at the request of the testator;* but such request may be inferred from the attendant circumstances in proof, by signs or gestures, as well as words: as in *Rutherford vs. Rutherford*, (1 *Denio Rep.* 33), by the testator directing the witness to be sent for, to attest the execution of his will, or from a request made to such witness by another person in the testator's presence. If there should be any evidence from which the jury might infer a request, that, as a question of fact, ought to be submitted to them."

Under the above statute, and the construction placed on it by this Court in the case just quoted from, it is manifest the facts do not make out the due execution of the will in hand. The proof certainly fails to establish the fact that the witnesses attested the will in question *at the request of the testator*. And more than this, there is no fact in proof, according to *Rogers et al. vs. Diamond, from which the jury could have inferred a request on the part of the testator*.

Having thus considered and determined the three enquiries growing out of the first ground for a new trial, we hold the Court below did not err in overruling it on that ground.

2. The second ground relied on for a new trial is, that the Court permitted improper and illegal testimony to be given. Is this so?

The particular testimony objected to, without attempting to give its precise phraseology, or language, was the statement of several witnesses, giving the general bearing and conduct of Finn towards the testator, for one or two years anterior to the date of the execution of the will, in which special instances are mentioned, wherein Finn is represented as having mal-treated,

cursed, abused, threatened, and even inflicted personal violence upon the testator. It is insisted, on the part of the appellants, that this testimony was incompetent, for the reason, that it does not relate to the *res gestæ*, or *factum probandum*.

The design of this evidence was, manifestly, to show that the will was not the free and voluntary testament of Crosby, but was the result of the influence which Finn had obtained over him, proved to have been exceedingly frail in body and imbecile in mind: or else that the disposition, made by Crosby of his estate, was an unnatural one, thereby rendering it more probable that the testator was not in his right mind, when the instrument was executed, or that it was superinduced by fear, instead of honest persuasion. We think this testimony falls clearly within the principle stated above, when considering the second enquiry under the first ground relied on in the motion for a new trial. See, also, 1 *Jarman on Wills* 37. We are, therefore, clearly of opinion that the testimony in question was competent, and the Court correctly admitted it to go to the jury. The motion for a new trial was properly overruled on the second ground assumed.

3. The third ground assumed in the motion for a new trial, is, that the Court gave improper and illegal instructions at the instance of the appellees. Is this so?

The instructions, given at the instance of the appellees, are six in number, and as follow:

1st. If it appears, from the evidence, that the will in question was not attested by each of the subscribing witnesses, at the request of Crosby, it is not his will, and the jury must find accordingly, and find the issue for the petitioners; but such request may be inferred from acts, gestures, or by a third person knowing it to be the desire of the testator.

2d. If it appears, from the evidence, to the satisfaction of the jury, that said Crosby was not of sound and disposing mind and memory, and did not act as a free agent in the making of said will, the same is invalid, and the jury must so find for the petitioners.

3d. If it appears, from the evidence and circumstances of the case, that said Crosby, at the time of signing the will, was unable to make a disposition of his property for the want of understanding and reason, the said will is invalid, and must be rejected and set aside, and the finding be for the petitioners.

4th. If the jury believe, from the evidence, that the said will was prepared and written by Finn, the legatee, and that Crosby was moved, compelled, or influenced to execute the same, in consequence of previous threats, menaces, abuses, harsh and overbearing conduct, violence committed, or threatened, on the part of said Finn, against C., for the purpose of inducing C. to make said will; or executed the same because he was afraid of Finn doing him bodily harm if he did not, and not freely and voluntarily, the said will is invalid, and must be rejected, and the issue found for the petitioners.

5th. If the jury believe, from the evidence, that the will in question was written by said Finn, and that he sent for the subscribing witnesses, and that he procured the execution of said will by artifice, fraud or imposition, and that Crosby was of such weak mind, at the time, as to be unable to resist him, the will is invalid, and must be rejected, and the issue found for the petitioners.

6th. If the jury believe, from the evidence, that the will in question was written by Finn, and that the latter had an undue influence over Crosby, and availed fraudulently himself of it, to induce C. to make such will, contrary to his wishes, the said will is invalid, and must be rejected, and the issue found for the petitioners.

We will not attempt a notice of these instructions farther than to say, that we do not regard any of them as abstract, or unwarranted by the evidence, and that they embody the law, as applicable to the particular state of facts developed by the testimony, as we have before shown, when considering the first and second grounds for a new trial.

4. The fourth ground relied on for a new trial, is, " that the

Court ruled out and rejected proper instructions asked by the defendants." Is this so?

The appellants—defendants below—asked the Court for fourteen instructions, which were all given as asked for, except the 5th, 8th and 11th, which were amended by the Court, and given as amended.

We will only state the instructions which were amended, showing them as moved for, and indicating the amendment made to each by the Court as they were given to the jury. They are as follows:

" *5th instruction.* A man's capacity may be unequal to the task of managing his business, and yet be adequate to making a valid will, and should the jury believe, from the testimony in this case, that Finn assumed any control over Crosby's business, yet before they could conclude that he was incapable of disposing of his property *"for the want of reason,"* they must first find from the proof before them, that at the time he executed the will in this case, he was almost, if not wholly deprived of his reason and understanding."

The amendment in this, inserted by the Court, is, *" for the want of reason."*

" *8th instruction.* If a man, who makes a will, is proved to be testable, or in other words, that he *'was of unquestionable sanity,'* then the idea of fraud is negatived."

The amendment in this, inserted by the Court, is, *' was of unquestionable sanity,'* instead of *' has reason and capacity to understand the nature of his act,"* as asked in the original.

" *11th instruction.* In order to set aside a will on the ground of fraud, coercion or undue influence, it must be made to appear *to the satisfaction of the jury,* that one or all of these means were used at the time the will was executed."

The amendment in this, is, *" to the satisfaction of the jury,"* instead of " *by undoubted proof,"* as asked in the original.

We have considered these instructions as they were asked, and also as they were amended and given by the Court, and we have been unable to discover how it was possible for the

appellants to be prejudiced by the amendments inserted by the Court. There seems to have been an issue between the counsel and the Court as to the force of language, both manifesting a desire to communicate the same idea to the jury, though expressed in language somewhat different. We regard the issue before us, on this point, more a criticism than an investigation of a legal proposition. We therefore dismiss it, and hold that the Court below did not err in overruling the motion for a new trial on this ground.

5th. The fifth ground relied on for a new trial is, " that after the jury retired to consider of their verdict, they returned into Court, and asked the Court, if a witness was, in the eye of the law, such a third person as the law required, to request the signing of the will, when the Court instructed the jury contrary to law."

The facts in relation to this matter, as they appear in the transcript before us, are these:

After the cause was submitted to the jury, and they retired, they returned into Court for further instruction; the defendants objected to the Court's instructing them further, but the Court overruled their objection, and instructed the jury that a witness to the will was not such a third person as the law required to request the signing of the will; to the giving of any instruction at that time, and to the correctness of the instruction given, the defendants excepted at the time, etc.

There was no evidence, as far as the transcript shows, that either of the witnesses to the will requested, in point of fact, the testator to sign it. There was proof, however, that Finn, the beneficiary under the will, not only requested the testator to sign it, but also the two attesting witnesses. The instruction was, therefore, wholly abstract, and without the slightest proof to sustain it. It however embodied good and sound law, for we have before declared, in the progress of this opinion, that the witnesses to a will should attest it at the *request*, either express or implied, as stated, of the testator, and we know of no law, or principle of law, which would make it the duty of

the attesting witnesses, or any one else, to request the testator to execute his will. The reverse of this is the law, for it is necessary, to render a will valid, that it should be a free and voluntary act on the part of the testator. We are at a loss, however, to conceive how it was possible for this instruction to influence the jury in the slightest degree. If abstractly right and it enunciates the law, and could not have influenced the jury to find an improper verdict, we would not, of course, set aside the verdict, unless the Court violated some positive rule or legislative enactment, in giving the instruction at the *time* and under the circumstances stated.

It is insisted by the counsel for the appellants, that the instruction in question could not have been given at the time it was, in consequence of the 12th rule adopted by this Court, at the July term, 1848, for the government of the practice of the Circuit Courts throughout the State. The rule is as follows:

" 12. When instructions to the jury are desired, they shall be asked for in writing, and settled by the Court before argument to the jury; and all instructions by the Court, of its own motion, shall be given in writing, if requested by either party."

We cannot discover how this rule can be involved in this question. The rule does not, in letter or spirit, restrict the Court as to *the time* at which it may give instructions on its own motion. All that it attempts to do is to require the Court, in the exercise of the right to give instructions on its own motion, to give them in writing if either party should require it. We apprehend, if the Court had the right to give instructions after argument, before the adoption of the above rule, it still has the right. Under the rule, the Court still retains the right to give oral instructions on its own motion. We suppose the Court may instruct the jury at any time, on its own motion, for the attainment of justice. The question is one of discretion, which we would not attempt to control, except in flagrant cases.

If the Court had misstated the law in this case, to the prejudice of the appellants, we would feel no hesitation in reversing the judgment on that account.

The Court did not err in overruling the motion for a new trial on this ground.

We have thus disposed of all the questions raised on the record, and in doing so have considered the evidence stated in the bill of exceptions as if it were all that was adduced at the trial. But such is not the case, as we have before shown. We could properly, therefore, only regard the facts stated, in connection with the instructions given and refused, to show their pertinency. The only questions legitimately before the Court were those growing out of the exceptions saved on the trial.

On the whole record we affirm the judgment of the Court below.