DICKINSON, RECEIVER CHICAGO, ROCK ISLAND & PACIFIC RY. CO., v. MCBRIDE.

Opinion delivered February 26, 1917.

1.  TRIAL—PROCEDURE—ORDER OF ARGUMENT OF COUNSEL.—In a personal injury action, the defendant denied all the material allegations of the complaint, throwing the burden of proof upon the plaintiff. After instructing the jury the court gave counsel one hour and a half on a side; one of plaintiff's counsel addressed the jury for thirty-five minutes, whereupon defendants' counsel moved to submit the case without further argument, refusing himself to make any argument. The court overruled defendant's motion and over defendant's

objection permitted another of plaintiff's counsel to continue the argument. When this argument was concluded plaintiff's counsel had not exhausted all of the time allotted to them, and defendants' counsel then moved the court to permit him to address the jury. The court overruled this motion also, and submitted the cause to the jury. *Held,* the plaintiff had the right to open and close, the record not showing that it had violated Kirby's Digest, § 6196, and that the court's rulings were correct.

2.  DAMAGES—PERSONAL INJURIES—REVIEW OF VERDICT.—In a personal injury action the court will not interfere with a verdict on the ground that it is excessive if the record contains sufficient substantial and legal evidence to support the verdict, and when liability is established, this court will not interfere on appeal with a verdict, unless it is so manifestly out of proportion to the nature and extent of the injury as to shock the sense of justice.

3.  DAMAGES—PERSONAL INJURIES—AMOUNT.—In an action by a brakeman against a railway company for damages caused by negligence. Where the plaintiff fell from a moving freight car because of a defective handhold, the evidence held sufficient to warrant a verdict for $20,000 in plaintiff's favor.

4.  CONTINUANCES—DISCRETION.—Where appellant's motion for a continuance in the trial court is not based upon a statutory ground, the exercise of the court's discretion in refusing the continuance will not be disturbed on appeal in the absence of a showing that the trial judge acted arbitrarily.

Appeal from Prairie Circuit Court, Southern District; *Thos. C. Trimble,* Judge; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1.  The continuance should have been granted. The accident occurred less than three months before that time; there were no broken bones, abrasions or other evidences of any injury, much less a permanent one. The jury could do no more than guess as to the extent of his injuries. We think the court abused its discretion in refusing a continuance. We offered to prove by doctors that there was no permanent injury. A continuance should have been allowed as it was impossible to determine in so short a time whether the injury was permanent or not, and whether he was incapacitated for the remainder of his life, etc.

2.  The statistics from the reports of the Interstate Commerce Commission reports show that in Illinois this company paid for 13 deaths $24,299.55,

while in Arkansas there were 12 deaths for which it paid $40,025.00. On the Illinois division there were 311 injuries for which $11,796.70 was paid, while on the Arkansas division there were 316 injuries for which we paid $46,264.27. One of two things is certain—we are paying too much in Arkansas or too little in Illinois. In Arkansas $169,669.13 was paid for personal injuries and death claims while on the whole system 8,201 miles, there was paid $794,133.09. The mileage in Arkansas is only 707 miles of track.

3. The court erred in its ruling as to the argument of counsel. 80 Pac. 944; 51 *Id.* 307; 29 Ark. 151; 32 *Id.* 593. Its action was prejudicial.

4. The verdict is grossly excessive. 100 Ark. 107; 106 *Id.* 177. Whether the excessiveness was caused by the erroneously permitted double argument for appellee, or some other cause, we do not know, but that, no doubt, was the exciting cause.

*Pace, Seawel & Davis,* for appellee.

1. There was no error in overruling the motion for a continuance. That was a matter of discretion for the court.

2. No error was committed in permitting Mr. Pace to argue the case and in refusing to permit Mr. Pugh to conclude the argument after the argument of Mr. Pace. The Kansas statute is different and the cases cited do not apply. The provisions of the different states can be found in 61 L. R. A. 520. Under our statute the plaintiff here had the right to open and close. This is a substantial right. Kirby's Digest, § 2388; 32 Ark. 593; 29 *Id.* 151.

Other states have passed on this question holding that the matter is within the discretion of the trial court, and that unless abused, no error can be predicated thereon. 30 Tex. Civ. App. 341; 72 S. W. 97; 141 *Id.* 243; 136 *Id.* 784; 19 *Id.* 545; 36 Mich. 254-7; 71 Neb. 691; 46 N. W. 872; 99 *Id.* 484; 72 N. E. 489; 82 Ind. 476; 87 S. E. 851; 94 Am. St. 870; 136 S. W. 784-6; Thompson on Trials (2 ed.), § 936; 36 Mich.

257. The concluding argument is a decided advantage and it is a right to which the party having the burden of proof is entitled. 29 Ark. 151; 98 *Id.* 132, 139. This court will not control the discretion of the trial court in such matters as argument of counsel, continuances, etc. 86 Ark. 486; 87 *Id.* 443; 89 *Id.* 612; 172 S. W. 843; 53 *Id.* 161; 54 Ark. 124; 34 *Id.* 390; 36 *Id.* 316; 67 *Id.* 57; 58 *Id.* 358; 54 Id. 588-597.

3. If the court committed error it was harmless. 96 Ark. 343; 69 *Id.* 442; 100 *Id.* 526; 80 *Id.* 376; 74 *Id.* 326. The liability is not denied and the alleged error could only affect the amount of damages and no prejudice is shown.

4. The verdict is not excessive under the evidence.

HUMPHREYS, J. Appellee, J. F. McBride, instituted this suit in the Southern District of the Prairie Circuit Court, on the 25th day of February, 1916, against the appellant, Jacob M. Dickinson, receiver of the Chicago, Rock Island & Pacific Ry. Co., to recover damages on account of personal injury received while engaged as head brakeman in the operation of a freight train running from Brinkley to Hulbert, Arkansas, and obtained a judgment in said court for $20,000.00. Proper proceedings were had, and this cause is here on appeal.

No serious contention is made that appellant is not liable for some amount. The appellee was injured in attempting to reach the top of a freight car for the purpose of giving signals which was a part of his duty. There was a defective handhold that gave way while he was climbing to the top of the car and he fell from four to six feet from the slowly moving train to the ground and received the injury. He had no knowledge of the defective condition of the handhold.

The third assignment for error is most strongly insisted upon for reversal. When all the evidence was in, the record recites: "After giving the foregoing instructions the court announced that each side would be

awarded an hour and a half for argument of the case to the jury, and requested the attorneys to arrange the division of time. It was agreed that Mr. Seawel would consume thirty-five minutes and Mr. Pace the balance of the time for the plaintiff. Mr. Seawel, for the plaintiff, thereupon addressed the jury, using thirty-five minutes of the time allotted to the plaintiff. At the conclusion of Mr. Seawel's argument the court offered Mr. Pugh, attorney for the defendant, an opportunity to proceed with his argument to the jury. Whereupon Mr. Pugh stated to the court that the defendant did not desire to make any argument in answer to the argument made by plaintiff's attorney, Mr. Seawel, and moved that the case be submitted without further argument. To this the plaintiff objected and the court refused the motion for the defendant to have the case submitted without further argument and permitted Mr. Pace, attorney for the plaintiff, to proceed with his argument to the jury. The defendant saved his exceptions to the ruling and action of the court in refusing to let the case be submitted upon the plaintiff's opening argument to the jury and objected and saved his exceptions to the action and ruling of the court in permitting any further argument being made upon the part of the plaintiff. Thereupon Mr. Pace, on behalf of the plaintiff, addressed the court and jury for the space of forty minutes and argued the testimony in detail and made a strong argument on the amount and extent of the damages to which he claimed the plaintiff was entitled. The argument of Mr. Pace for the plaintiff was made to the jury over the protest and objections of the defendant, and the defendant saved his exceptions to the ruling of the court in permitting the same to be made. At the conclusion of said argument, the court announced to Mr. Pace that he had not consumed the time remaining to plaintiff for argument, but had fifteen minutes more time if he desired to use it. Whereupon Mr. Pugh, attorney for the defendant, moved the court that he now be given an opportunity to answer said argument of the plaintiff. To this the

plaintiff objected and the court overruled said motion and refused to allow the defendant to answer the argument of the plaintiff; to which ruling and action of the court the defendant at the time saved his exceptions and same are noted of record."

It is not clear whether Mr. Pugh agreed for Mr. Seawel to argue the case thirty-five minutes and for Mr. Pace to use the balance of time assigned to plaintiff; or whether the time assigned to plaintiff was divided in this manner between Mr. Seawel and Mr. Pace. The request on the part of the court for the attorneys to arrange the division of time and the statement immediately following "that it was agreed, etc." might well include Mr. Pugh in the agreement, and might well be construed as an assent on the part of appellant for Mr. Seawel to use thirty-five minutes of the hour and a half assigned to plaintiff and for Mr. Pace to use the rest of the time assigned to plaintiff.

Be that as it may, we deem it best to construe the statute pertaining to argument of counsel in cases. The sixth subdivision of section 6196 of Kirby's Digest in reference to the course an argument shall take, uses the following language: "In the argument the party having the burden of proof shall have the opening and conclusion; and if, upon the demand of his adversary he shall refuse to open and fully state the grounds upon which he claims a verdict, he shall be refused the conclusion." Appellant contends that where the defendant makes no argument, the opening argument by the plaintiff must be regarded as a closing argument. It will be observed under this statute that the plaintiff is to be denied a closing argument in the event he fails to fully state the grounds upon which he claims a verdict in his opening argument. And this seems to be the only contingency upon which the party having the burden can be denied the right to close the argument. The language of the statute is so plain and direct that it is hardly susceptible of more than one construction, and that construction is, that as a matter of right the one upon whom the burden rests shall have

the right to close the argument as well as to open it, if in his opening statement he fully states the grounds upon which he claims a verdict.    In the case of *Tobin et al.* v. *Jenkins et al.*, 29 Ark. 151, Mr. Justice Walker used the following language:  "It is provided in the Code, sec. 349, that the party having the burden of proof shall have the conclusion of the argument.    The complainants in this case held the affirmative and were consequently entitled to conclude, as held by this court in *Rogers et al.* v. *Diamond*, 13 Ark. 479; *McDaniel* v. *Crosby et al.*, 19 Ark. 533.    We must, therefore, hold that it was error in the court below to deny to the complainants the right to conclude the argument before the jury.    That there is a decided advantage before a jury in having the concluding argument, there can be no doubt; the extent of the wrong, however, it is hard to estimate.    It may suffice that it is a right and a privilege to which complainants were entitled."    In the case of *Mann* v. *Scott et al.*, 32 Ark. 593, this court approved the construction placed upon the sixth subdivision of Sec. 349 of the Civil Code of Arkansas, 1869, in *Tobin et al.* v. *Jenkins et al.*, *supra*.    It is true the sixth subdivision of section 349 of the Civil Code of Arkansas, 1869, has been amended, but the amendment did not eliminate the right of the party, upon whom the burden rested to close the argument.    It simply abridged or modified the right to close by requiring him to fully state the case in an opening argument, if his adversary insists.    Under the amended statute, the party upon whom the burden rests not only has the right to conclude the argument, but also to open it.

In the instant case, the answer filed denies every material allegation in the complaint, and clearly places the burden of the whole case upon appellee.

The authorities in other states with reference to the conduct of arguments seem to be divided but the division grows out of the peculiar wording of the statutes in the several states and the different rules of practice in vogue therein.    We cannot conform our views to

the construction placed upon this statute by learned counsel for appellant.

(1)    Of necessity, trial courts must be conceded a discretion in the conduct of proceedings before them, else, disorder will follow.    If the statute in question is not mandatory, it certainly grants the power to trial courts to control the course of argument so as to conform to orderly procedure.    Unless there is a clear abuse of discretion, this court will not interfere.    Certainly the trial court did not abuse its discretion in this case.    He offered ample opportunity to counsel for appellant to argue the case at a proper time and place in the proceeding.    Appellant declined to take advantage of this opportunity.    Appellant attempted to control the course of argument itself in the instant case.    There is no authority in the statute granting such right to a defendant in a case unless the burden is upon him, neither is it in accordance with the general rule of practice in this State.

(2)    The first, second and fourth contentions insisted on for reversal are of a kindred nature and we regard it appropriate to consider them together. They emphasize the incongruity of so great measure of damages where there are not abrasions or broken bones. It is true that such evidences generally accompany severe injuries, but it is likewise true that very severe injuries may be received without abrasions or broken bones evidencing them.    Especially is this true with reference to injuries to the nervous system.    Many internal injuries bear no such evidences.    It would not do to lay down the rule that large verdicts or judgments are excessive unless the injuries are accompanied by abrasions, bruises or broken bones.    We thoroughly agree with learned counsel for appellant that the amount of damages should be commensurate with the injury.    Large damages should not be awarded by juries nor countenanced by courts for slight injuries. Large verdicts can find support only in severe injuries. It must be admitted that the verdict and judgment in this case is large.    This fact, however, will not warrant

the invasion of the province of the jury by the court. The court cannot try the case *de novo*. The court can only look to the record to see whether there is sufficient, substantial, legal evidence to support the verdict. If the liability is established, this court on appeal will not interfere with verdicts unless so manifestly out of proportion to the nature and extent of the injury as to shock the sense of justice.

It becomes necessary then to turn to the record of the evidence to ascertain whether or not the motion for continuance requested by appellant should have been granted and whether or not the verdict is excessive. We will first discuss the evidence to ascertain whether there is enough substantial legal evidence to sustain so large a verdict. The substance of appellee's evidence in the material parts is as follows: He fell on his back and was rendered unconscious until thirty-five cars had passed him. Just as the caboose reached him he became conscious and felt that every bone in his body was broken. He walked about two blocks toward the depot and became deathly sick and sat down. A little later, he went to the depot. A physician examined him and found no bones broken. He was suffering and in misery. Train No. 45 stopped and he rode in the smoker to Little Rock. He got a man there to help him on the street car and went out to St. Vincent's Hospital, where parties receiving injury on the Rock Island were cared for. After arriving there, he went to bed. In the afternoon, a physician called and put strips of adhesive plaster on the small of the back where the injury seemed to be. The next day was Christmas and he went to his home in Little Rock on a street car and took Christmas dinner and returned to the hospital that evening. He then went to bed and was up some the next day. He kept getting worse and the next day procured a pair of crutches. He complained to the physician in charge that he was getting worse and remained in the hospital for about a week or ten days. During this time he was up and down. The physician put more strips of adhesive plaster on his back when the

other wore off. Feeling that he was getting worse under the treatment, he left the hospital and went home in an automobile. When he reached home, he went to bed and remained there until the morning of the 17th of January. He then sat up in a rocking chair. At the time of the trial he felt worse than he did ten days after he got hurt. At that time he had no control over the left leg and could cross his legs only by lifting the lame leg over the well one with his hands. After crossing his legs, he could not take the lame limb down without using his hands. He had no feeling in the left leg until he would pinch it a half dozen times. He had no feeling in the injured limb until it was rubbed a long time. He exhibited his leg to the jury and stated that it was smaller than the well leg and that it was cold and numb. The jury examined and felt the limb. He walked up and down before the jury and claimed he could not stand on the lame limb without the use of his crutches. He claimed that the movement caused a pain and misery in the small of his back. He said that he had no control whatever over the limb and had to drag it as he walked. He had lost twenty-five pounds after the injury and before the trial. At the time of the injury he weighed 193 to 196 pounds and was a very strong, active man. The pain seemed to cover about seven inches in the small of his back. In describing the feeling he said that it felt like a thousand needles sticking in his back. He could not rest at night; only slept about three or four hours during the night and the balance of the time had to sit up in a chair. He could not lie on his back unless he was propped up. Said that he was very nervous and described his nervous condition as a nervous collapse. Said that at times he would just collapse and lie there. Said that he had spells of feeling as if he were going to die, and could not get enough air to relieve him at such times but that when water was placed on his head he would get all right. After the injury he was afflicted with very severe headaches, the pain being over his eyes, and it caused a blurring such as to interfere with reading fine print. After the injury

he had to use the urinal from three to five times at night and seven or eight times during the day. He had no power to hold his urine when the desire seized him, and after he urinated the water kept dribbling.

He was twenty-six years old at the time of the injury and when working regularly could earn about $100 a month, but on a general average had earned $85 per month.

He was corroborated as to the extent of his suffering by his sister. There was a sharp conflict as to the nature and extent of the injury between the medical experts who testified for the appellee and those who testified for appellant.

The two who testified on behalf of appellee in substance say that appellee received a permanent injury in five lumbar vertebrae involving the spinal cord in such a way as to impair the nerves that control the motion of the left leg. As a result of the injury, appellee lost control of the left leg and a part of the sensation therein and the foot became cold and clammy, and had atrophied one inch at the time of the trial. The nervous system had degenerated on the left side. In the opinion of these medical experts, ample time had elapsed for improvement in the condition of appellee, but instead he had grown worse and was permanently injured.

The medical experts who testified on behalf of appellant regarded the injury as a slight one and temporary in its effect. They prognosed the injury to be neuritis traumatis, or an inflammation of the nerves caused by a blow. In their opinion, the limb had not diminished or withered and appellee would recover from the injury in four to eight months.

There was a sharp conflict between these experts, and each one was compelled under grilling cross-examination to give the reasons for arriving at his conclusions.

The expectancy of appellee at the time of the trial was thirty-eight years. He was a splendid specimen of manhood. His earning capacity averaged about $85 per month and when he had regular work he could earn

about $100 per month. He was engaged in a line of work where promotions are not infrequent and an increase in pay might reasonably be expected.

(3) If the jury accepted the evidence of appellee and his expert witnesses as correctly revealing the nature and extent of the injury, then it follows that there was a serious, permanent injury that practically destroyed the comfort, pleasure and earning capacity of a stalwart young man. The jury had a right to believe this testimony and must have given great credence to it. We cannot say to the jury what witnesses they shall believe or disbelieve. There is ample evidence here, if believed, upon which to base a verdict for $20,000.00. *St. L., I. M. & S. R. R. Co.* v. *Osborne*, 95 Ark. 310.

(4) Was it an abuse of the trial court's discretion not to grant a continuance in order to test out whether this was a permanent or temporary injury? The trial was had about three months after the injury occurred. Both parties were present and ready for trial. Before appellee could recover, it was necessary for him to make out his case by a preponderance of the evidence and the burden was upon him to establish the nature and extent of his injury. The ground assigned for a continuance does not come within any of the well known statutory grounds for continuance, so it was a matter wholly and purely within the sound discretion of the trial court to grant or refuse. No flagrant abuse of this discretion has been pointed out. There is nothing to indicate that the refusal to grant the continuance was an arbitrary exercise of the court's discretion. It has been uniformly held by this court that the granting of continuances is within the sound discretion of the trial court and unless clearly abused a refusal to grant a continuance will not work a reversal of the judgment. *Ft. Smith & Van Buren Dist.* v. *Scott*, 103 Ark. 405; *Taylor* v. *Gumpert*, 96 Ark. 354.

Finding no error, the judgment is affirmed.